Good morning, Your Honor. This is Ryan Carreon on behalf of Appellant Michael Grecco Productions, Incorporated. Okay, go ahead. Good morning, and I'd like to reserve three minutes for rebuttal. That's fine. A mere three months ago, this court in Claypool, America, which is Hewlett-Packard Enterprises, not only reaffirmed the delayed discovery rule for applying the statute of infringement, but specifically held that the correct standard for determining when a copyright holder should have known of an infringement is when the copyright holder had constructive knowledge of the facts giving rise to the claim. This constructive notice standard requires knowledge of specific facts of the type to prompt investigation, which would reasonably lead to the discovery of the infringement. In this case, it is clear that Appellant Michael Grecco Productions sufficiently pled in its second amended complaint that it did not have actual or constructive knowledge of the infringement prior to conducting a reverse image search in 2018. Counsel, real quick, you said second amended complaint. Do you mean first amended complaint? Yes, Your Honor. I apologize. Yes, there was only an original complaint and a first amended complaint after that. Sure. So in the first amended complaint, Michael Grecco Productions specifically pled that it was not aware of Ziff Davis or its websites prior to conducting the reverse image search. Because Michael Grecco Productions was not aware of Ziff Davis or its websites, it had no reason to suspect that Ziff Davis was infringing on any of its images and therefore had no duty to investigate. But this case is more than just about the applicability of the statute of limitations. If the Dupree Court order were to be affirmed, it would impose upon copyright holders a duty to devote substantial time and financial resources to proactively seeking out infringements, even if they have no reason to suspect infringements exist. Otherwise, the copyright holder would risk losing the right to pursue a legitimate infringement claim. So let me, can I just back you up a little bit? So where did the District Court go wrong? So I think there was a number of errors, Your Honor. I think the first error, and now I'm talking about the second order that the District Court. Yes, the final order. Correct. So in that case, or excuse me, in that order, the District Court kind of said a few contradictory things. The first, the District Court said that Michael Grecco Productions did not plead any facts to support the invocation of the Delayed Discovery Doctrine, but also referred to the sentences that I alluded to, where Michael Grecco Productions pled that it wasn't aware of Ziff Davis or its I don't think necessarily considered those to be factual, but they are factual because there's really no other way for MGP to plead that it didn't know about Ziff Davis. It just didn't know because it didn't know. There's not really much else you can say about that, but under a rule eight standard of a short, plain statement, that would apply, right? We're not asking MGP or detailed facts. So the District Court did not consider that to be statements of fact, which was incorrect. The second error, I think, and the more critical error, is that the issue of reasonableness, the court made a determination that the allegations in Michael Grecco Productions complaint were unreasonable, but reasonableness is a question of fact. So the court made a reverse image search existed in general, prior to 2018, that MGP had a duty to investigate, I guess, any... Let me ask you this. One thing that caught my eye about the complaint, then I'm talking about the first amended complaint, is the allegations regarding, relating to defendant Ziff Davis, paragraphs 16 and 17, where it's alleged that Ziff Davis LLC is a leading global digital media company and produces and distributes premium content. Defendant claims that its platform has garnered 1.1 billion views. And I guess, I guess the District Court just inferred from that, that that was readily available information. Yes, Your Honor. And look, we're not taking the position that it was or was not reasonable. That's a question of fact that needs to be determined by the jury. But the fact that we're talking about a massively trafficked website, as the District Court referred to it, that's really just a red herring. There's no allegation or no inference or no information, really, to make the inference that the actual articles themselves, featuring the infringing content, were highly trafficked, were featured prominently. Just because the platform itself is large, does not mean that a copyright holder, or in this case MGP, had any automatic duty to just assume that infringements are occurring and to therefore have to search, right? There needs to be a specific triggering event sufficient to impute that constructive knowledge to trigger the duty to investigate. So if this Court were to embrace that rule, it would essentially give large media companies who have far-reaching websites or content distribution networks a pass for undiscovered infringement. You can never claim delayed discovery because such and such an entity is so large that you should automatically have a duty to investigate, right? Counsel, it's a quick question for you. There's another complaint pending before the Ninth Circuit in a case called BDG Media, and it's referenced in the briefs. It's not identical, but there are some strong similarities. I was curious, in the First Amendment complaint in that case, there's far more detail about how these images were discovered than the First Amendment complaint in this case. Can we, when making the determination of the disclosures that the company made in the complaint, that your client made the complaint, can we draw anything from the First Amendment complaint filed in BDG Media? Because I believe they are the same images. Yes, Your Honor, and I see I'm out of time. May I briefly answer, Your Honor? No, you still have two, on my clock, you have 250. Go ahead. I believe I was, yeah, we're reserving a few minutes for rebuttal, so I'll be brief. But I'll give you some time for rebuttal. Okay, thank you, Your Honor. So, Judge Owens, to answer your question, I think that, you know, in the BDG Media complaint, there was a lot more explanation of just the general nature of how reverse image search works, and what its limitations are, and things of that nature. I think that certainly those things can be applied to this case. I don't think, from a Rule 8 pleading standard, that it is necessary to plead those types of things. No, I got you there, but, I mean, it was filed by the same lawyer, correct? Yes, Your Honor. And in that complaint, it's the same images, correct? I believe one of the images is the same, yes. I thought it was the flashlight in the hallway involved. Am I wrong about that? Well, you can tell me in rebuttal, you can check that. But in the complaint, in the complaint in that, in the BDG Media, it actually says when your client discovered these photos, that were actually on the infringing, or that you claim were infringing. Those allegations are not in the complaint here. So, again, I'm just trying to understand why in one lawsuit, the complaint filed by the same lawyer says when the photos were discovered, and how they were discovered, actually says they were discovered through reverse image. So, that could have been fled in this case, but it wasn't. I'm just trying to understand why. So, Your Honor, I will refer to you to page 18 of the record. It's paragraph 21 of the First Amendment complaint, and it states that on or about November 2018, MGP discovered that defendant used the images on defendant's websites after conducting a reverse image search of the website. So, to answer Your Honor's question, we specifically allege that they were discovered in November 2018, and we specifically allege that they were discovered via a reverse image search. Now, I believe in the BDG case, there may have been, and again, I apologize, I need to review that, but I believe there may have been some allegations about which specific reverse image search technology was used. Right. We didn't plead that in this case. In the brief in the that it was by a Google image search. But, you know, I don't think that level of detail is necessary, because the question is whether or not it can be inferred as a matter of law, that under these allegations, MGP is unreasonable, or there is an unreasonable amount of delay. And, you know, the question of the limitations of reverse image search technology are, and the various technologies and how they function, I mean, that might even be borderline expert testimony, and certainly not required to be pled in the complaint. And so, for those reasons, we believe the district court should be reversed. Okay, thank you, counsel. We'll hear from the, we'll hear from your opposing counsel. Good morning, Your Honors. If it pleases the court, my name is Guy Rutenberg. I represent the appellee, Ziff Davis. Your Honors, I think there are two separate reasons why this court should affirm. The first reason is applying the discovery rule, as this court has articulated it in Rowley and in Polar Bear, even applying that standard as it is, we believe the plaintiff hasn't pled it, and we'll talk about that. And we think, second of all, if we get there, we think the recent decisions from the United States Supreme Court, and in particular, Rutkiski that came out at the end of last year, really undermines the rationale for whether a discovery rule should be applied in a copyright case. I think the Supreme Court applies a standard that says we no longer use discovery rule by default. We have to apply this test to figure out whether a discovery rule applies, and I respectfully submit that I don't think the Ninth Circuit has ever applied that. But before I get there, I want to get back to what was pled here under the existing standard as articulated by the plaintiffs under the Polar Bear standard. And I think there's a very important element of Polar Bear that the plaintiff overlooked, and I think he sort of made a statement that kind of reveals that the pleadings overlook it. Polar Bear says there's two things you have to plead in order to invoke the discovery rule. One is the lack of knowledge, and he pleads that. We don't dispute that. But the other aspect is you have to plead that the lack of knowledge was reasonable under the circumstances. And I think what plaintiffs' counsel said a minute ago was they're not taking a position that it was or was not reasonable. And I think they do need to take a position, and they need to affirmatively plead that it was unreasonable. And they don't even have a conclusory statement that it was unreasonable, or that it was reasonable, I'm sorry. But they have to plead facts showing why it was reasonable for them not to know, and they didn't do that. If you sort of reduce what they've said, they've really said two things. They've said, A, we didn't know of the infringement, and B, we didn't know of the infringer. And that's really all they say. And that's not enough. We said in Polar Bear, though, that discovery is a question of fact. True, true. But that doesn't mean that there doesn't need to be allegations from which, if you accept those allegations, a reasonable trier of fact could still find that it was reasonable. And they don't allege any facts. But that's all a question of fact, though, isn't it? It is, but based on the allegations. And I think, I'm sorry, I didn't mean to interrupt, Your Honor. No, no, go ahead, no. And so I think there's two aspects to what's happened here. I think, first of all, they said, we just don't know, we just didn't know, and we didn't know about the infringer. And I think Polar Bear itself and cases before Polar Bear say, lack of knowledge, well, that's not enough to plead the discovery rule. You need to plead something more than that. And I think not only don't they plead it, they actually plead facts that affirmatively demonstrate that the lack of knowledge was itself unreasonable. I think it was Judge Owens that pointed out to the allegations of the complaint that show that this is a widely trafficked website. In addition to that, it's correct that they discovered this using reverse images. But what they don't explain and they don't plead is why they couldn't do that earlier. In other words, there's no facts that show why in November of 2018 they suddenly decided to do a reverse image search. There's nothing that explains why they couldn't do that in 2014 or 2015. That was an allegation that they made themselves in their pleading that says, we have the ability to use reversing image searching. They introduced that into the pleading and the court. But counsel, if I could just jump in. So it's Yorkton then that a copyright holder, let's say Sports Illicit, which has probably millions of photos, that they are under a constant obligation to continually reverse image search every single photo in their catalog every day. Is that your position? I think my position is if we apply the polar bear standard, then what they have to plead is why it was reasonable under the circumstances. And there may or may not be reasons why, in the example that your honor is articulating, why it was reasonable or unreasonable. I think the point here is they haven't pled anything. All they've said is we just didn't know. And we didn't know about the infringement. They don't explain. If their allegation was we have too many photographs and we couldn't get to it, we didn't have much time. There's nothing like that in the pleadings. But under your view of the case, then if they had a paragraph that simply said, for business reasons, we do not find it practicable to search our inventory of photographs unless someone brings one to our office. I'm not sure we would because they don't even now. I think the interesting thing about this case, your honor, is nobody brought it to their attention, at least not that they allege in November of 2018 either. In other words, they don't explain why they discovered in 2018 either, other than the fact that they suddenly decided to use a reverse image search that they could have used all along. I certainly think there are plausible things one could say hypothetically. To explain why it was reasonable under the circumstances for them not to know. But I think they have to get there. I think they have to say something. And I think what the district court is saying is you haven't fled anything other than I didn't know and that's not enough. I think that's just one part of the standard. And I think, and so I think that's part of the analysis here. But I also think if we get there, and I don't know that we need to, but if we get there, I think we have to think about whether or not the discovery rule actually applies to a copyright case. And I think what's happened historically is the Ninth Circuit has applied this discovery rule, not just in copyright cases, but as a general rule, as a default. And I think it was Judge Fernandez in the Mangum case who said, as a general rule, we apply a discovery rule. And I think Judge Fernandez in Mangum noted that the Supreme Court has now articulated the Ratisky case. And I think the Ratisky case is actually even more in point. Although it is not about the copyright statute, there are two elements to Ratisky. And that came out in December of 2019. And what the Supreme Court in that case says unequivocally, there is no discovery rule by default. That's number one. And number two, they say that in order to evaluate whether or not there is a discovery rule for any should not, as a court system, override what Congress intended. And I'm unaware of any case where this court, the Ninth Circuit Court, has gone through and applied the test that the Supreme Court announced in Ratisky. And so I think the language that in the Mangum case, where he said that the Supreme Court was not articulating a general rule, I don't think that that standard, I don't think we can say that anymore, after Ratisky. Counsel, let me just jump in here. It seems to me, the Supreme Court twice, Petrella and in a subsequent case called SCA Hygiene Products, has said we're, we have not decided this issue when it comes to copyright and actually cites the Ninth Circuit and other circuits. We have the Oracle decision from earlier this year that applies the discovery rule. We're just a three judge panel here. What gives us the power under Miller v. Gammy to say, despite all of that, despite the Supreme Court saying they haven't decided it, and despite Oracle applying the rule, what gives the three of us the power to say, well, you know what, it's, you know, irreconcilable under Miller v. Gammy and we can, we can blow the thing up. I think Miller v. Gammy says quite explicitly that you can, you, the three judge panel can do that when there is a Supreme Court decision that's undercut the Ninth Circuit decision. And I think Ratkiski pretty clearly undercuts the reasoning of the Polar Bear decision and the Rowley decision in the sense that neither of those cases conducted the analysis that the Supreme Court in Ratkiski says is now necessary. No, I appreciate that, but we have Oracle in the middle. I appreciate that, Your Honor. And Oracle does not, in my view, address the issue of whether or not the discovery rule is still good law. What Oracle says is it applies the discovery rule. It doesn't seem to be an issue that was even challenged. In Oracle, there was a question as to whether or not constructive knowledge would be enough to prevent invocation of either a fraudulent concealment or whether it would be enough to prevent the discovery rule. And the court didn't get to the question of whether or not the discovery rule is applicable because they said there is evidence here that you knew or should have known and we don't even get to the next step. Just like in this case, Your Honors, if you decide that under Polar Bear and under Rowley that the plaintiff has not met the standard, I don't think you need to get to the issue of whether or not the discovery rule is still good law. Okay. Thank you, counsel. Thank you, Judge. Okay, you have a minute for rebuttal just to make whatever point you want to make. Thank you, Your Honor. Just to be brief, so the plaintiff did, the appellant did plead application of the discovery rule contrary to what we just heard by stating that it did not know of Ziff Davis and did not know of the infringements. Now, whether or not that's reasonable, that lack of knowledge is reasonable, is a question of fact. The second thing that I the text of the statute said that a claim must be brought, quote, within one year from the date on which the violation occurs. And so the Supreme Court held in that case that the plain meaning of the statutory text was clear and it didn't leave any room to read in a discovery rule. And the final point that I would make is that if the statute of limitations interpreters that the district court adopted were to be affirmed, it would impose upon, excuse me, would discriminate not only against struggling and independent artists who lack the time and financial resources to endlessly and aimlessly search for infringements, but it would stifle the very creativity that the copyright scheme was designed to promote. And so I'll submit. Okay, thank you very much. We appreciate your arguments this morning. The matter is submitted.
judges: Fernandez, Paez, Owens